**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARCO ANTONIO LARA-CAZARES,
                        *Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney
General,

                        *Respondent.*

No. 03-71568

Agency No.
A28-818-794

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 9, 2005—Pasadena, California

Filed May 23, 2005

Before: Harry Pregerson, William C. Canby, Jr., and
Robert R. Beezer, Circuit Judges.

Opinion by Judge Canby

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

5591

## COUNSEL

Jonathan D. Montag, San Diego, California, for the petitioner.

Jennifer Paisner, Office of Immigration Litigation, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

## OPINION

CANBY, Circuit Judge

Marco Lara-Cazares is a permanent resident of the United States whom an Immigration Judge ordered removed from the country on the ground that he had been convicted of a "crime of violence" within the meaning of 18 U.S.C. § 16. His crime, as defined by the State of California, was gross vehicular manslaughter while intoxicated. The Board of Immigration Appeals affirmed the removal order, and Lara-Cazares petitions for review. We grant his petition and reverse because we conclude that, under the principles announced in the recent Supreme Court decision of *Leocal v. Ashcroft*, 125 S. Ct. 377 (2004), the crime of which Lara-Cazares was convicted does not qualify as a "crime of violence."[1]

## I

Lara-Cazares is a native and citizen of Mexico who became a lawful permanent resident of the United States in January, 1988. In June of 1998, the State of California convicted him of gross vehicular manslaughter while intoxicated. CAL. PENAL CODE § 191.5(a).[2] He received a total sentence of eight

---

[1]We note that neither the Immigration Judge nor the Board of Immigration Appeals had the benefit of *Leocal* at the time of their decisions.

[2]Section 191.5(a) provides the following:

years in prison.[3] The government initiated removal proceedings, arguing that Lara-Cazares's conviction qualified as an aggravated felony because it was a crime of violence. *See* 8 U.S.C. § 1101(a)(43)(F).

The Immigration Judge, and later the Board, found that his conviction so qualified. The Board reached this conclusion primarily because the crime required "gross negligence," which satisfied the *mens rea* requirement of this Court for a crime of violence within the meaning of 18 U.S.C. § 16. *See, e.g.*, *Park v. INS*, 252 F.3d 1018, 1023-25 (9th Cir. 2001) (holding that "criminal negligence" requirement for involuntary manslaughter satisfies the *mens rea* requirement for a crime of violence); *United States v. Ceron-Sanchez*, 222 F.3d 1169, 1172-73 (9th Cir. 2000) (holding that requirement of recklessness causing injury was sufficient to qualify crime as violent).

## II

We review de novo whether a conviction under state law is a removable offense. *See, e.g.*, *Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1151 (9th Cir. 2003).

---

Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140 [minors driving while intoxicated], 23152 [driving while intoxicated], or 23153 [driving while intoxicated and causing bodily injury] of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

[3]The record does not contain any other significant facts concerning his offense.

## III

**[1]** Lara-Cazares is subject to removal if he was "convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii). If Lara-Cazares is removable under this provision, we have no jurisdiction to review his petition. *See* 8 U.S.C. § 1252(a)(2)(C). If he is not removable under this provision, however, we have jurisdiction and he necessarily prevails. Thus "the jurisdictional question and the merits collapse into one." *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir. 2000).

The Immigration and Nationality Act defines an "aggravated felony" to include "a crime of violence (as defined in section 16 of Title 18 . . . )." 8 U.S.C. § 1101(a)(43)(F).[4] The primary issue in this case is therefore whether Lara-Cazares's conviction qualifies under the terms of 18 U.S.C. § 16, which provides:

> **[2]** The term "crime of violence" means—
>
> (a) an offense that has as an element the *use*, attempted *use*, or threatened *use* of physical force *against the person or property of another*, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force *against the person or property of another may be used in the course of committing the offense*.

(Emphasis added). This "statute directs our focus to the 'offense' of conviction," and its "language requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Leocal*, 125 S. Ct. at 381.

---

[4]Section 1101(a)(43)(F) also requires that the conviction resulted in a sentence of imprisonment of at least one year, but there is no dispute that Lara-Cazares's sentence surpassed that minimum.

**[3]** We conclude that the Supreme Court's analysis in *Leocal* establishes that Lara-Cazares's conviction does not qualify as a crime of violence under these provisions. In *Leocal*, the Supreme Court addressed the question whether a conviction under Florida law for driving under the influence of alcohol (DUI) and causing serious bodily qualified under § 16. The Court unanimously held that the conviction did not qualify as a crime of violence. *See Leocal*, 125 S. Ct. at 383-84. An important part of the Court's analysis addressed the common meaning of the "use" of force "against the person" of another:

> The critical aspect of § 16(a) is that a crime of violence is one involving the "use . . . of physical force *against the person or property of another*." (Emphasis added.) . . . "[U]se" requires active employment. While one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would "use . . . physical force against" another person when pushing him; however, we would not ordinarily say a person "use[s] . . . physical force against" another by stumbling and falling into him. When interpreting a statute, we must give words their "ordinary or natural" meaning. The key phrase in § 16(a) — the "use . . . of physical force against the person or property of another" — most naturally suggests a higher degree of intent than negligent or merely accidental conduct. Petitioner's DUI offense therefore is not a crime of violence under § 16(a).

*Id.* at 382 (internal citations omitted). The Court also applied the same reasoning to the broader provisions of § 16(b):

> [W]e must give the language in § 16(b) an identical construction, requiring a higher *mens rea* than the merely accidental or negligent conduct involved in a

> DUI offense. This is particularly true in light of
> § 16(b)'s requirement that the "substantial risk" be a
> risk of using physical force against another person
> "in the course of committing the offense." In no "or-
> dinary or natural" sense can it be said that a person
> risks having to "use" physical force against another
> person in the course of operating a vehicle while
> intoxicated and causing injury.

*Id.* at 383. Finally, the Court emphasized that it was ulti-
mately determining the meaning of the term "crime of vio-
lence." "The ordinary meaning of this term, combined with
§ 16's emphasis on the use of physical force against another
person . . . suggests a category of violent, active crimes that
cannot be said naturally to include DUI offenses." *Id.*

**[4]** We conclude that this reasoning compels a result in
favor of Lara-Cazares in the present case. The crime of which
he was convicted required Lara-Cazares to have been driving
while under the influence of alcohol, and to have killed a per-
son with gross negligence (but without malice aforethought)
in so doing. There is no requirement that he intentionally used
the vehicle to inflict injury. Under the Supreme Court's rea-
soning in *Leocal*, Lara-Cazares simply cannot be regarded as
having "used" physical force "against the person . . . of anoth-
er." 8 U.S.C. § 16. He did not actively employ force against
another in a manner to constitute a crime of violence under
§ 16.

We cannot accept the government's contention that *Leocal*
does not apply because it dealt only with a requirement of
simple negligence, while the California statute violated by
Lara-Cazares required gross negligence. *See* CAL. PENAL CODE
§ 191.5(a). The government points to our earlier decision in
*United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145 (9th
Cir. 2001), in which we distinguished between mere negli-
gence and recklessness for purposes of § 16, and argues that
*Leocal* adds nothing to our analysis in *Trinidad-Aquino* and

does not extend to gross negligence. We are unable to read *Leocal* in such limited fashion. Gross negligence is still negligence, however flagrant, and does not constitute the kind of *active* employment of force against another that *Leocal* requires for a crime of violence.[5] Gross negligence and drunken driving causing death are the categorical elements of the crime of which Lara-Cazares was convicted, and these elements do not change whether the crime is characterized as "DUI causing injury" or "gross vehicular manslaughter while intoxicated." The death remains accidental.[6] "Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." *Leocal*, 125 S. Ct. at 383.

[5] Two additional aspects of *Leocal* reinforce our conclusion that a drunken driving crime, even accompanied by gross negligence, is not a crime of violence for purposes of § 16. First, as the Supreme Court pointed out, the definition of "violent crime" set out in § 16 applies in both civil and criminal contexts. *See id.* at 384 n.8. Accordingly, any potential ambiguity in § 16 must be resolved in favor of Lara-Cazares under the rule of lenity. *See id.*

[6] Second, Congress within months of incorporating § 16 into the immigration law enacted 8 U.S.C. § 1101(h), which provides:

---

[5]Thus a jury may find gross negligence under § 191.5(a) from "the level of the defendant's intoxication, the manner of driving, or other relevant aspects of the defendant's conduct resulting in the fatal accident." *People v. Bennett*, 819 P.2d 849, 854 (Cal. 1992) (modified opinion). These factors are not necessarily directed at an intent in "use" of "force against another person."

[6]It is true that *Leocal* stated that it was not presented with a statute requiring proof of "the *reckless* use of force against a person or property of another." 125 S. Ct. at 384. We do not read this statement as negating *Leocal*'s analysis that the terms "use" and "against a person" do not encompass negligence in drunken driving.

> For purposes of section 1182(a)(2)(E) of this title, the term "serious criminal offense" means—
>
> (1) any felony;
>
> (2) any crime of violence, as defined in section 16 of Title 18; or
>
> (3) any crime of reckless driving or of driving while intoxicated or under the influence of alcohol or of prohibited substances if such crime involves personal injury to another.

As the Supreme Court pointed out in *Leocal*, it would deprive clause (3) of this statute of most of its meaning if DUI offenses causing injury to another were, *ipso facto*, crimes of violence covered by clause (2). *See Leocal*, 125 S. Ct. at 384 & n.9. It seems abundantly clear that Congress, while considering a drunken (or reckless) driving offense that causes injury to another to be a "serious criminal offense," it did not consider it to be a "crime of violence." As the Supreme Court said in concluding its opinion in *Leocal*:

> Drunk driving is a nationwide problem, as evidenced by the efforts of legislatures to prohibit such conduct and impose appropriate penalties. But this fact does not warrant our shoehorning it into statutory sections where it does not fit.

*Id.* at 384.

[7] We conclude, therefore, that *Leocal* precludes removal of Lara-Cazares for having committed a crime of violence. To the extent that our decision in *Park v. INS*, 252 F.3d 1018 (9th Cir. 2001), and cases there cited support a contrary result, we conclude that they are no longer good law in light of *Leocal*.

## IV

**[8]** Because the crime for which Lara-Cazares was ordered removed was not a crime of violence, Lara-Cazares is not removable by reason of having committed an aggravated felony. *See* 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii). We accordingly are not deprived of jurisdiction over this case, *see* 8 U.S.C. § 1252(a)(2)(C), and Lara-Cazares prevails. We grant the petition for review and reverse the order of the Board of Immigration Appeals.

**PETITION FOR REVIEW GRANTED; REVERSED.**