This case calls upon us to decide whether the petitioner’s 2003 Arizona conviction for domestic violence was a “crime of domestic violence” under a federal statute that triggers removal of a legally admitted resident alien from this country. The federal statute, as interpreted by the Supreme Court in Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), covers only those crimes involving intentional conduct. Because the relevant Arizona statute permits conviction when a defendant recklessly but unintentionally causes physical injury to another, and because the petitioner’s documents of conviction do not prove he intentionally used force against another, we conclude the federal statute does not apply. Accordingly, the petitioner is not removable for his 2003 Arizona conviction and we return the case to the original three-judge panel to decide whether he is removable on other grounds.
I. Factual and Procedural Background
Jose Roberto Fernandez-Ruiz, a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals’ (BIA’s) order affirming an immigration judge’s (IJ’s) decision to rescind his lawful permanent resident status, remove him from the United States, and deny him any relief from removal.
Fernandez-Ruiz was admitted into the United States as a lawful permanent resident on October 26, 1990. Thereafter, he committed several crimes, three of which are relevant to his petition for review.
In 1992, Fernandez-Ruiz was convicted of “theft by control of property” in violation of Arizona Revised Statutes § 13-1802(A)(1) & (C). For this offense, his initial sentence was two years’ probation. He later violated the conditions of his probation and was sentenced to sixty days in jail. For a second probation violation, he was sentenced to jail for “twelve months at half time.”
In both 2002 and 2003, Fernandez-Ruiz was convicted of “domestic violence/assault” in violation of Arizona Revised Statutes §§ 13-1203 and 13-3601. For the 2002 conviction, Fernandez-Ruiz was sentenced to thirty days in jail, suspended should he properly perform probation for fifteen months. From this sentence, we infer his offense constituted a “class three” misdemeanor.[1] The offense underlying Fernandez-Ruiz’s 2003 conviction, by contrast, was a “class two” misdemeanor.
On the basis of these convictions, the Department of Homeland Security (DHS) initiated removal proceedings. As *1124 grounds for removal, the DHS charged that Fernandez-Ruiz had post-admission convictions for a crime of domestic violence (the 2003 conviction now at issue), two crimes involving moral turpitude (the 2002 and 2003 convictions), and an aggravated felony (the theft by control of property conviction).
An IJ sustained all three charges of removal, deemed Fernandez-Ruiz ineligible to apply for a discretionary waiver of deportation, and denied cancellation of removal. In a two-page, per curiam opinion, the BIA adopted and affirmed the decision of the IJ.
A three-judge panel of our court denied Fernandez-Ruiz’s petition for review. See Fernandez-Ruiz v. Gonzales, 410 F.3d 585, 588 (9th Cir.2005). As a threshold matter, the panel held our court had jurisdiction over the case. See id. at 587. The panel went on to hold that Fernandez-Ruiz’s class two misdemeanor domestic violence offense constituted a crime of violence under 18 U.S.C. § 16(a) and rendered him removable under 8 U.S.C. § 1227(a)(2)(E)®. See Fernandez-Ruiz, 410 F.3d at 588.[2] Because his conviction occurred in 2003, after the 1996 repeal of 8 U.S.C. § 1182(c), Fernandez-Ruiz was ineligible to apply for a discretionary waiver of deportation. Fernandez-Ruiz, 410 F.3d at 588. Because his theft by control of property offense was an aggravated felony, he was ineligible for cancellation of removal. Id.
We ordered rehearing en banc to resolve an inter- and intra-circuit conflict as to whether, under Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), crimes involving the merely reckless use of force can be crimes of violence. See Fernandez-Ruiz v. Gonzales, 431 F.3d 1212, 1212 (9th Cir.2005).[3]
II. Jurisdiction
We adopt the portion of the panel’s opinion addressing the government’s claim that, under 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to consider Fernandez-Ruiz’s petition. See Fernandez-Ruiz, 410 F.3d at 586-87. As the panel explained, under section 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231, “we are no longer barred by § 1252(a)(2)(C) from reviewing Fernandez-Ruiz’s petition on account of his past convictions.” Fernandez-Ruiz, 410 F.3d at 587.
III. Crime of Domestic Violence: Categorical Analysis
The government claims Fernandez-Ruiz’s 2003 misdemeanor domestic violence conviction subjected him to removal under 8 U.S.C. § 1227(a)(2)(E)®, which permits the deportation of “[a]ny alien who at any time after admission is convicted of a crime of domestic violence.”[4] In this context, a “crime of domestic violence” is “any crime of violence (as defined in section 16 of Title 18) against a person” who *1125 has one of several enumerated domestic relationships with the perpetrator. Id.
To determine whether Fernandez-Ruiz’s state law domestic violence offense meets the Immigration and Nationality Act’s definition of a crime of domestic violence, we begin by applying the “categorical approach” laid out in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). See Ruiz-Morales v. Ashcroft, 361 F.3d 1219, 1221-22 (9th Cir. 2004) (applying the categorical approach to determine whether mayhem under California law was a crime of violence under 18 U.S.C. § 16). Under this approach, without regard to the particular facts of Fernandez-Ruiz’s offense — and looking beyond the Arizona statutes’ title for the offense — we must ask whether the “full range of conduct” proscribed by the statutes under which Fernandez-Ruiz was convicted meets the definition of a crime of domestic violence. United States v. Baron-Medina, 187 F.3d 1144, 1146 (9th Cir. 1999) (quoting United States v. Lomas, 30 F.3d 1191, 1193 (9th Cir.1994)); see Leocal, 543 U.S. at 7, 125 S.Ct. 377 (explaining that the language of 18 U.S.C. § 16 requires “looking] to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [a] petitioner’s crime”). Interpreting the definition of a crime of domestic violence requires us to consider the “ordinary, contemporary, and common meaning of the language Congress used in defining” a crime of violence. Ruiz-Morales, 361 F.3d at 1222 (quoting United States v. Trinidad-Aquino, 259 F.3d 1140,1144 (9th Cir.2001)); see Leocal, 543 U.S. at 9, 125 S.Ct. 377 (“When interpreting a statute, we must give words their ‘ordinary or natural’ meaning.” (quoting Smith v. United States, 508 U.S. 223, 228, 113 S.Ct. 2050,124 L.Ed.2d 138 (1993))).
Of the two statutes under which Fernandez-Ruiz was convicted, only the assault statute requires in-depth analysis. See Ariz.Rev.Stat. § 13-1203.[5] Both parties agree the specific focus of our analysis must be whether the offense defined in Arizona Revised Statutes § 13-1203(A)(1) is a crime of violence under 18 U.S.C. § 16(a).[6] The state statute reads: “A person commits assault by ... [i]ntentionally, knowingly or recklessly causing any physical injury to another person.” Ariz.Rev. Stat. § 13-1203(A)(1) (emphasis added). *1126 The federal statute defines a crime of violence as “an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.” 18 U.S.C. § 16(a). Thus, the determinative question is whether “recklessly causing ... physical injury to another person,” Ariz.Rev.Stat. § 13-1203(A)(1), necessarily involves the “use of physical force against the person ... of another,” 18 U.S.C. § 16(a).[7]
A. Existing Ninth Circuit Precedent Until recently, it was well established in this circuit that crimes involving the reckless use of force could be crimes of violence. For example, in United States v. Ceron-Sanchez, 222 F.3d 1169 (9th Cir. 2000), we interpreted the very statute at issue here and concluded it satisfied 18 U.S.C. § 16(a):
A conviction under § 13-1203(A)(1) may be based on reckless conduct, which Ceron-Sanchez argues does not constitute violent conduct. However, in order to support a conviction under § 13-1203(A)(1), the reckless conduct must have caused actual physical injury to another person. Therefore, the use of physical force is a required element of § 13-1203(A)(1).
Ceron-Sanchez, 222 F.3d at 1172-73.
We held that crimes of recklessness could be crimes of violence even though we recognized there is an element of volition inherent in 18 U.S.C. § 16(a)’s requirement that an offender “use” physical force “against” another person. See United States v. Trinidad-Aquino, 259 F.3d 1140, 1145-46 (9th Cir.2001). Our reasoning was that recklessness “requires conscious disregard of a risk of a harm that the defendant is aware of.” Id. at 1146. On similar grounds, we held that offenses requiring “criminal negligence” could be crimes of violence. See Park v. INS, 252 F.3d 1018, 1024-25 (9th Cir.2001). By contrast, we held that crimes of simple negligence lacked the volitional element necessary for crimes of violence. Trinidad-Aquino, 259 F.3d at 1145.
Recently, however, we cast doubt on our cases distinguishing recklessness and criminal negligence from simple negligence. In Lara-Cazares v. Gonzales, 408 F.3d 1217 (9th Cir.2005), a Mexican citizen and national had previously been convicted under California law of gross vehicular manslaughter while intoxicated. Id. at 1219. Although this conviction required a minimum culpability of “gross negligence,” an IJ found the underlying offense to have been a crime of violence under 18 U.S.C. § 16 and ordered the alien’s removal. Lara-Cazares, 408 F.3d at 1219. The BIA affirmed, citing our cases holding that crimes of criminal negligence and recklessness could be crimes of violence. Id.
We reversed on the basis of Leocal. Id. at 1222. In Leocal, the Supreme Court held that driving under the influence of alcohol (DUI) cannot be a crime of violence if the statute defining the offense “reach[es] individuals who were negligent or less.” 543 U.S. at 13, 125 S.Ct. 377. Rejecting the government’s argument “that Leocal add[ed] nothing to our analysis in Trinidad-Aquino and [did] not extend to gross negligence,” we held that gross negligence “does not constitute the kind of active employment of force against *1127 another that Leocal requires for a crime of violence.” Lara-Cazares, 408 F.3d at 1221. Although the facts of Lara-Cazares did not require us to discuss in detail the implications of Leocal for crimes of criminal negligence or recklessness, we concluded that Leocal abrogated our holdings in Park and Ceron-Sanchez. See id. at 1222 (“To the extent that our decision in Park v. INS, 252 F.3d 1018 (9th Cir.2001), and the cases there cited[including Ceron-Sanchez] support a contrary result, we conclude that they are no longer good law in light of Leocal”).
Nonetheless, shortly after deciding Lara-Cazares, we relied on Cerorir-Sanchez to hold a crime of recklessness— second-degree assault under Washington law — a categorical crime of violence. See United States v. Hermoso-Garcia, 413 F.3d 1085, 1089 (9th Cir.2005) (Bea, J.). In doing so, we failed to distinguish LaraCazares or Leocal. See id.
Because our existing precedent is inconsistent, we must examine the reasoning of Leocal to decide the present case.
B. Leocal
1. Reasoning of Leocal
In determining that DUI offenses requiring a mens rea of mere negligence or less cannot be “shoehorn[ed]” into the federal definition of a crime of violence, Leocal, 543 U.S. at 13, 125 S.Ct. 377, the Supreme Court emphasized that 18 U.S.C. § 16(a) requires the “ ‘use ... of physical force against the person or property of another,’ ” Leocal, 543 U.S. at 9, 125 S.Ct. 377 (quoting 18 U.S.C. § 16(a)). Whereas the word “use,” taken alone, could “in theory” connote the accidental employment of force, it would be “much less natural to say that a person actively employs [ie., uses] physical force against another person by accident.” Id. Thus, the Court reasoned, 18 U.S.C. § 16(a)’s requirement that force be used “against” someone or something suggested that crimes of violence require “a higher degree of intent than negligent or merely accidental conduct.” Leocal, 543 U.S. at 9, 125 S.Ct. 377 (emphasis added).
As further support for the conclusion that 18 U.S.C. § 16 does not reach merely accidental offenses, the Court looked to the ordinary meaning of the term “crime of violence.” See Leocal, 543 U.S. at 11, 125 S.Ct. 377. That term, the Court observed, naturally suggests a category of crimes more “violent” and “active” than DUI offenses. Id.
The Court also remarked that, because courts must interpret 18 U.S.C. § 16 consistently in both criminal and noneriminal cases, the rule of lenity applies. Leocal, 543 U.S. at 11 n. 8, 125 S.Ct. 377. Under this rule, to whatever extent 18 U.S.C. § 16’s definitions of a crime of violence lack clarity, courts should construe the ambiguous statutory language against the government. Leocal, 543 U.S. at 11 n. 8, 125 S.Ct. 377.
2. Recent Interpretations of Leocal
Although the Court in Leocal expressly reserved the question whether crimes of violence can include offenses involving the reckless use of force, see id. at 384, two of our sister circuits have interpreted the reasoning of Leocal to place such offenses beyond the reach of 18 U.S.C. § 16.[8]
In Bejarano-Urrutia v. Gonzales, 413 F.3d 444 (4th Cir.2005), a native and citi *1128 zen of Mexico petitioned for review of an order that he be removed from the United States for having committed involuntary manslaughter by driving intoxicated. Id. at 445. The Virginia statute of conviction required reckless disregard for human life, but not necessarily reckless disregard for whether force would be used. Id. at 447. Thus, the court was not required to decide whether offenses requiring the reckless use of force, or reckless disregard for a risk that force might be used, can be crimes of violence. See id. Nevertheless, the court deemed Leocal controlling:
[T]he conclusion of the Leocal Court that “[i]n no ‘ordinary or natural’ sense can it be said that a person risks having to ‘use’ physical force against another person in the course of operating a vehicle while intoxicated and causing injury” strongly indicates that the result in Leo-cal would have been the same even had a violation of the statute there at issue required recklessness rather than mere negligence.
Id. (citation omitted). Applying this reading of Leocal, the Fourth Circuit granted the petition for review. Id.
The Third Circuit has on three occasions endorsed a similar reading of Leocal— beginning with Tran v. Gonzales, 414 F.3d 464 (3d Cir.2005). Tran involved the petition for review of a Vietnamese citizen ordered removed from the United States for having been convicted, under Pennsylvania law, of “conspiracy to commit reckless burning or exploding.” Id. at 468. The Tran court began its assessment of whether reckless burning or exploding was a crime of violence by citing dictionary definitions of “use.” Id. at 470. An “obvious commonality” among these definitions was that “the'use’ of force means more than the mere occurrence of force; it requires the intentional employment of that force, generally to obtain some end.” Id. (emphasis added).
In concluding that mere recklessness was insufficient under such a standard, the Tran court expressly disagreed with our decision in Trinidad-Aquino. Id. Trinidad-Aquino, the court suggested, could not be reconciled with the Supreme Court’s emphasis in Leocal that “ ‘use’ requires active employment.” Id. (quoting Leocal, 543 U.S. at 9, 125 S.Ct. 377 (emphasis added)). Accordingly, the court granted Tran’s petition for review. Id. at 473.
The Third Circuit reaffirmed its interpretation of Leocal in another immigration case, Popal v. Gonzales, 416 F.3d 249 (3d Cir.2005). In Popal, the offense at issue was Pennsylvania’s misdemeanor simple assault offense. Id. at 253. The statute of conviction required a minimum culpability of recklessness. Id. at 254.[9] In granting the petition for review, the Popal court both reaffirmed the reasoning of Tran and rejected a contrary argument based on the legislative history of 18 U.S.C. § 16(a). See Popal, 416 F.3d at 254-55.
A Senate Report discussing the crime of violence definition now codified at 18 U.S.C. § 16(a) suggested this definition “would include a threatened or attempted simple assault or battery on another person.” S.Rep. No. 98-225, at 307 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3487. In reference to this suggestion, the Popal court stated:
We acknowledge that the legislative history of § 16(a) provides some support for the government’s theory that that section encompasses simple assault. Nonetheless, we do not think that this *1129 legislative history undermines our conclusion [that simple assault committed recklessly is not a crime of violence]. Instead, we think it likely that, when the drafters of § 16 mentioned simple assault as an exemplary crime of violence, they had in mind traditional common-law simple assault, defined as a crime “committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.” The common law thus required ‘wilfullness,’ i.e., intent, in order to find a defendant guilty of simple assault. It is entirely plausible that this definition might have been Congress’s referent in discussing § 16(a).
Popal, 416 F.3d at 254 n. 5 (citations omitted).
Finally, and perhaps most persuasively, the Third Circuit interpreted the reasoning of Leocal to reach crimes of recklessness in Oyebanji v. Gonzales, 418 F.3d 260 (3d Cir.2005). Oyebanji involved a Nigerian citizen who faced removal for a New Jersey vehicular homicide conviction. Id. at 261-62. The statute of conviction required proof of recklessness — defined in part as “consciously disregarding] a substantial and unjustifiable risk that [a] material element [of an offense] exists or will result from[the actor’s] conduct.” Id. at 263 n. 4 (quoting N.J. Stat. Ann. § 2C:2-2(3)). The court concluded that Leocal controlled primarily because of LeocaVs repeated emphasis that crimes of violence cannot be “accidental.” See id. at 263-64.
The term “accidental,” the court explained, “is most often used to describe events that did not ‘occur [ ] as a result of anyone’s purposeful act.’ ” Id. at 264 (quoting Black’s Law Dictionary 16 (8th ed.2004)) (alteration in original). As such, even though New Jersey’s definition of recklessness involved conscious disregard of a substantial and unjustifiable risk, the reckless use of force was not sufficiently “intentional” to prevent an offense from being accidental. See id. (“[W]e cannot overlook the Court’s repeated statement that ‘accidental’ conduct (which would seem to include reckless conduct) is not enough to qualify as a crime of violence.” (emphasis added)).
As in Popal, the court in Oyebanji acknowledged that “reasonable arguments can be made in support of the proposition that” crimes of recklessness may be crimes of violence. Id. Nonetheless, the court interpreted Leocal to foreclose such arguments — at least at the circuit court level. See id. (“We recognize that there are plausible grounds for distinguishing Leocal and that reasonable arguments can be made in support of the proposition that Oyebanji’s offense of conviction should be viewed as a crime of violence. But as a lower federal court, we are advised to follow the Supreme Court’s ‘considered dicta.’ ”) (citation omitted).
3. Teachings of Leocal
We agree with our sister circuits that the reasoning of Leocal — which merely holds that using force negligently or less is not a crime of violence — extends to crimes involving the reckless use of force.
Citing with approval our holding in Trinidad-Aquino that crimes of violence must have a volitional element and so cannot include crimes of negligence, the Leo-cal Court went a step further: the Court not only endorsed the position that crimes of violence must be volitional but also repeatedly emphasized that such crimes cannot be “accidental.” See Leocal, 543 U.S. at 8-10, 125 S.Ct. 377; see also Lara-Cazares, 408 F.3d at 1221 (rejecting the argument that Leocal adds nothing to Trinidad-Aquino). “Accidental” means “[n]ot having occurred as a result of any *1130 one’s purposeful act.” Black’s Law Dictionary 16 (8th ed.2004). “Purposeful” means “[djone with a specific purpose in mind; DELIBERATE.” Id. at 1272. Reckless conduct, as generally defined, is not purposeful. See id. at 1298 (defining recklessness as “[cjonduct whereby the actor does not desire harmful consequence but nonetheless foresees the possibility and consciously takes the risk” (emphasis added)). Even more clearly, reckless conduct as defined by Arizona law is not purposeful. See Ariz.Rev.Stat. § 13-105(9)(c) (defining recklessness as “consciously disregarding] a substantial and unjustifiable risk that the result will occur or that the circumstance exists,” and providing that “[a] person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication also acts recklessly” (emphasis added)). Thus, the reckless use of force is “accidental” and crimes of recklessness cannot be crimes of violence. See Oyebanji, 418 F.3d at 264; Tran, 414 F.3d at 470-71.
Contrary to the dissent, for purposes of 18 U.S.C. § 16, we see no “important differences between negligence and recklessness.” See Dissent Op. at 17890. To the extent recklessness differs from criminal negligence, “[t]he difference between them is that criminal negligence requires only a failure to perceive a risk, as compared to the recklessness requirement of an awareness and conscious disregard of the risk.” In re William G., 192 Ariz. 208, 963 P.2d 287, 292 n. 1 (Ct.App.1997); accord 1 Charles E. Torcía, Wharton’s Criminal Law § 27 (15th ed.1993). But this subjective awareness of possible injury is not the same as the intentional use of physical force against the person of another. Neither gross negligence in failing to perceive, nor conscious disregard of a substantial and unjustifiable risk of injury implies that physical force is instrumental to carrying out the crime, such as the plain meaning of the word “use” denotes. See Leocal, 543 U.S. at 10, 125 S.Ct. 377 (“The reckless disregard in § 16 relates not to the general conduct or to the possibility that harm will result from a person’s conduct, but to the risk that the use of physical force might be required in committing a crime.”). Therefore, neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence under § 16.
As the Court suggested in Leocal — and as illustrated by considering the full range of conduct proscribed by Arizona Revised Statutes § 13-1203(A)(1) — any other conclusion would “blur the distinction between the ‘violent’ crimes Congress sought to distinguish for heightened punishment and other crimes.” Leocal, 543 U.S. at 11, 125 S.Ct. 377. Under the language of Arizona Revised Statutes § 13-1203(A)(1), a wife and mother could be convicted of assault and domestic violence under Arizona law by recklessly running a stop sign and causing a traffic accident that injured her passenger-husband and child. Indeed, a person could be convicted of assault under Arizona Revised Statutes § 13-1203(A)(1) by running a stop sign “solely by reason of voluntary intoxication” and causing physical injury to another. Ariz.Rev.Stat. § 13-105(9)(e). Such conduct cannot, in the ordinary sense, be called “active” or “violent.” Leocal, 543 U.S. at 11, 125 S.Ct. 377.[10]
*1131 Finally, because the text of 18 U.S.C. § 16(a) is sufficiently clear, we see no need in this case to employ legislative history as an interpretive aid. See, e.g., United States v. Meek, 366 F.3d 705, 719 (9th Cir.2004) (“We need not factor in legislative history because the meaning of the statute is clear from the text.”). The requirement that the offense have “as an element, the use ... of physical force against the person or property of another,” 18 U.S.C. § 16(a) (emphasis added), implies the use of force must be a means to an end.[11]
*1132 For these reasons, we hold that the offense underlying Fernandez-Ruiz’s 2003 misdemeanor domestic violence conviction was not a categorical crime of violence under 18 U.S.C. § 16(a) or, by extension, a categorical crime of domestic violence under 8 U.S.C. § 1227(a)(2)(E)(i). The bedrock principle of Leocal is that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another. In light of Leocal, we expressly overrule our cases holding that crimes of violence under 18 U.S.C. § 16 may include offenses committed through the reckless, or grossly negligent, use of force.
IV. Crime of Domestic Violence: Modified Categorical Analysis
When a petitioner’s state statute of conviction does not define a categorical crime of violence, we apply a “modified categorical approach.” See Penuliar v. Gonzales, 435 F.3d 961, 966 (9th Cir.2006); Ruiz-Morales, 361 F.3d at 1222. Under this approach, we consider whether any of a limited, specified set of documents—including “the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding and the judgment” (sometimes termed “documents of conviction”)—show the petitioner’s conviction entailed an admission to, or proof of, the necessary elements of a crime of violence. Hernandez-Martinez v. Ashcroft, 343 F.3d 1075, 1076 (9th Cir.2003).
Here, with respect to Fernandez-Ruiz’s 2003 misdemeanor domestic violence conviction, the record contains three documents relevant to our modified categorical assessment: the complaint, the judgment, and a pro forma plea agreement. The government concedes, as it must, that none of these documents demonstrates that Fernandez-Ruiz’s conviction was based upon an admission, or any other proof, that he used force “intentionally” or “knowingly,” as opposed to “recklessly.” Ariz.Rev.Stat. § 13-1203(A)(1). Accordingly, on the record now before us, we cannot conclude under the modified categorical approach that Fernandez-Ruiz committed a crime of violence or, by extension, a crime of domestic violence as defined by federal law.
Although the government concedes we cannot now reach such a conclusion, it asks us to defer applying the modified categorical approach and instead remand this case to the BIA for further development of the record. As support for its request, the government supplies only a cursory citation to INS v. Ventura, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). Ventura, however, is inapplicable.
Ventura involved the asylum application of Orlando Ventura, a citizen of Guatemala. Id. at 14, 123 S.Ct. 353. The IJ and the BIA determined that Ventura was ineligible for asylum because he had failed objectively to demonstrate past persecution for a political opinion. Id. at 15, 123 S.Ct. 353. Because Ventura had not made this required threshold showing, the BIA noted it did not need to address whether “changed country conditions” rebutted Ventura’s claim to a well-founded fear of future persecution. Id.
*1133 We reversed the BIA’s decision. Id. First, we concluded the evidence compelled a finding that Ventura had demonstrated past persecution for a political opinion; he had therefore established the presumption of a well-founded fear of future persecution. Id. Having reached this conclusion, we rejected requests from both parties that we remand the case to the BIA for consideration of changed country conditions. Id. Although we “recognized that the BIA had not decided the ‘changed circumstances’ question and that ‘generally’ a court should remand to permit that consideration,” we invoked an exception to the usual rule: A court “need ‘not remand ... when it is clear that [it] would be compelled to reverse the BIA’s decision if the BIA decided the matter against the applicant.’ ” Id. (quoting Ventura v. INS, 264 F.3d 1150, 1157 (9th Cir.2001)). This exception applied in Ventura, we concluded, because a 1997 State Department report about Guatemala “clearly demonstrate[d] that the presumption of a well-founded fear of future persecution was not rebutted.” Id. (quoting Ventura v. INS, 264 F.3d 1150, 1157 (9th Cir.2001)).
The Supreme Court reversed our decision not to remand. Id. at 18, 123 S.Ct. 353. The Court gave two reasons why the exception we had invoked to the “ordinary remand” rule did not apply. Id. at 17, 123 S.Ct. 353. First, “the State Department report [was], at most, ambiguous” as to whether conditions in Guatemala were sufficiently changed to rebut the presumption of Ventura’s well-founded fear of future persecution. Id. “Second, remand could [have led] to the presentation of further evidence of current circumstances in Guatemala — evidence that [could] well [have] prove[d] enlightening given the five years that [had] elapsed since the report was written.” Id. at 18, 123 S.Ct. 353. Under the circumstances, invoking the exception to the ordinary remand rule violated several “basic considerations” of administrative law: that, for “a matter that statutes place primarily in agency hands,” an agency should be permitted to “bring its expertise to bear”; that the agency “can evaluate the evidence”; and that the agency can “make an initial determination.” Id. at 16-17, 123 S.Ct. 353.
Neither of the Ventura Court’s principal reasons for deciding we should have applied the ordinary remand rule applies in the present case. First, whereas the State Department report at issue in Ventura was “ambiguous,” id. at 17, 123 S.Ct. 353, the documents of conviction in the record here — as the government itself concedes— cannot possibly be interpreted to establish that Fernandez-Ruiz used force against his victim intentionally or knowingly, rather than recklessly. Second, unlike in Ventura, there is no possibility here that new evidence has developed in the years since the BIA’s erroneous decision: Fernandez-Ruiz was convicted in January 2003, and all relevant documents of conviction became available before the DHS initiated removal proceedings.
Moreover, the “basic considerations” of administrative law that favored a remand in Ventura do not apply with equal force here. Unlike Ventura, the present case does not involve an issue the law commits to the agency’s expertise. See, e.g., Oyebanji, 418 F.3d at 262 (“[T]he BIA is not charged with administering 18 U.S.C. § 16 and has no special expertise regarding the interpretation of that criminal statute... .”); Singh, 386 F.3d at 1230 (“We reject the ... assertion that we owe ‘substantial deference’ to the Attorney General’s interpretations of general state and federal criminal statutes.”). Another distinction is that Ventura undeniably involved an issue the BIA had not considered: whether changed country conditions rebutted the presumption of the defendant’s well-founded fear of future persecu *1134 tion. Here, by contrast, whether the offense underlying Fernandez-Ruiz’s 2003 conviction was a crime of domestic violence under federal law is an issue the BIA has already addressed — albeit under the categorical approach, rather than the modified categorical approach. Ventura, 537 U.S. at 17, 123 S.Ct. 353. Finally, the standard of review differs. In Ventura, had we remanded to the BIA for a finding on changed country conditions, we would have reviewed any such finding under the substantial evidence standard. See Smolniakova v. Gonzales, 422 F.3d 1037, 1052 (9th Cir.2005). Here, we review de novo whether a conviction constitutes an aggravated felony. See, e.g., Penuliar, 435 F.3d at 966. After remanding this issue to the BIA, we would not “later determine whether [the BIA’s] decision exceeds the leeway that the law provides.” Ventura, 537 U.S. at 17, 123 S.Ct. 353.
Our conclusion that Ventura does not apply in the present case is consistent with Notash v. Gonzales, 427 F.3d 693 (9th Cir.2005). In Notash, the petitioner had a prior conviction for “attempted entry of goods by means of a false statement.” Id. at 695. The government contended this offense was a “crime involving moral turpitude,” such that the petitioner’s conviction rendered him removable. Id. In proceedings before an IJ, the petitioner “explained that, when completing his customs declaration form, he had left a line relating to foreign goods blank because he was not sure how to declare the items.” Id. He argued that “although crimes involving fraud generally are considered to involve moral turpitude, crimes involving false statements are not categorically considered to involve moral turpitude”; “his offense,” he claimed, “did not involve ‘clear deceit’ [or] an attempt to obtain a property interest to which he was not entitled.” Id. The IJ disagreed, applying the categorical approach without reaching the modified categorical approach, and the BIA affirmed without an opinion. See id. We rejected the agency’s assessment that the petitioner had committed a categorical crime involving moral turpitude. See id. at 697-98. We then granted the petition for review, holding that, because “none of the documents that may be examined under the modified categorical approach were in the record,” the government had “failed to meet its burden of proving that the offense for which [the petitioner] was convicted” constituted a crime involving moral turpitude. Id. at 699-700. Notably, we reached this conclusion without first remanding the case for the government to introduce new evidence or the agency to apply the modified categorical approach. See id.
Admittedly, Notash is not perfectly analogous to the present case. At the time of the agency proceedings in Notash, there was no Ninth Circuit precedent establishing that the petitioner’s statute of conviction defined a categorical crime involving moral turpitude. See id. at 698 (explaining that the agency had based its decision on Supreme Court and agency precedent, not Ninth Circuit precedent). By contrast, when Fernandez-Ruiz’s agency proceedings took place in 2003, it was a matter of settled law in our circuit that violations of his statute of conviction, Arizona Revised Statutes § 13 — 1203(A)(1), were categorical crimes of violence. See Ceron-Sanchez, 222 F.3d at 1172-73.
In light of Ceron-Sanchez, we can imagine an argument that, at the time of Fernandez-Ruiz’s agency proceedings, the government could not have anticipated the need to build a record supporting removal under the modified categorical approach. If the government relied on Ceron-Sanchez when determining what documents to introduce before the agency, our decision to overrule Ceron-Sanchez could at least *1135 conceivably constitute an unusual, unforeseeable circumstance justifying remand.
We need not now decide whether changes in our law may ever justify remanding a case for further development of the administrative record because the government has not argued that, in reliance on Ceron-Sanchez, it failed to anticipate the necessity of introducing documents of conviction demonstrating Fernandez-Ruiz’s offense was a crime of domestic violence under the modified categorical approach. We consider the government’s reticence significant, but predictable: the record includes evidence suggesting the government did recognize the need to present documents of conviction in case it lost under the categorical approach. Beyond the bare-bones documents needed to show Fernandez-Ruiz had a prior conviction' — -the complaint and the judgment — the government presented the agency with Fernandez-Ruiz’s plea agreement. On these facts, new developments in the law do not warrant a remand.
In sum, even under the modified categorical approach, Fernandez-Ruiz’s 2003 conviction under Arizona Revised Statutes §§ 13-1203 and 13-3601 for misdemeanor domestic violence assault is not a crime of violence as defined by 18 U.S.C. § 16(a). Accordingly, taken alone, the subject conviction cannot justify his removal. See 8 U.S.C. § 1227(a)(2)(E)®.
V. Remedy
Our decision that Fernandez-Ruiz is not removable under 8 U.S.C. § 1227(a)(2)(E)® necessitates consideration of issues the panel did not decide. See Fernandez-Ruiz, 410 F.3d at 588 n. 2. Although an en banc court takes a case, not an issue, en banc, it has the discretion to decide the entire case or only the parts of the case that formed the basis for the en banc call. Summerlin v. Stewart, 309 F.3d 1193, 1193 (9th Cir.2002). It may make that decision either prior to or after the en banc argument. Here, having resolved the issue that the panel asked the court to consider in its sua sponte en banc call, see G.O. 5.4.C.3, we believe it better to return the case to the panel for resolution of the remaining issues.
RETURNED TO THE PANEL FOR THE ISSUANCE OF AN OPINION REGARDING THE REMAINING ISSUES.

. Arizona law designates three classes of misdemeanors. See Ariz.Rev.Stat. § 13-707(A). Class three is the least serious, punishable by a maximum of thirty days’ imprisonment. See id.

. Holding Fernandez-Ruiz removable on this ground obviated the panel’s need to address whether he was also removable because his domestic violence offenses were crimes involving moral turpitude or because his theft by control of property offense was an aggravated felony. See Fernandez-Ruiz v. Gonzales, 410 F.3d 585, 588 n. 2 (9th Cir.2005).

. The three-judge panel opinion shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court. Fernandez-Ruiz v. Gonzales, 431 F.3d 1212, 1212 (9th Cir.2005).

.The government does not now argue that Fernandez-Ruiz's 2002 misdemeanor domestic violence conviction met these requirements.

. The other statute simply provides that, when the perpetrator of an assault has one of several domestic relationships with the victim, the assault constitutes a state law crime of domestic violence. See Ariz.Rev.Stat. § 13-3601(A). All of the relationships covered under the state statute are covered under the Immigration and Nationality Act. See 8 U.S.C. § 1227(a)(2)(E)(i) ("[T]he term 'crime of domestic violence’ means any crime of violence ... by any ... individual against a person who is protected from that individual’s acts under the domestic or family violence laws of the United States or any State....”).

. As a class two misdemeanor, Fernandez-Ruiz’s 2003 domestic violence conviction could have been under either Arizona Revised Statutes § 13 — 1203(A)(1) or (A)(2). See id. § 13-1203(B). The documents of conviction do not reveal whether Fernandez-Ruiz was charged and convicted under one or both of these provisions. As already explained, however, Fernandez-Ruiz committed a categorical crime of violence only if the "full range of conduct” for which he could have been convicted meets the requirements of 18 U.S.C. § 16. United States v. Baron-Medina, 187 F.3d 1144, 1146 (9th Cir. 1999) (quoting United States v. Lomas, 30 F.3d 1191, 1193 (9th Cir.1994)). Thus, because we ultimately conclude that not all of the conduct proscribed by Arizona Revised Statutes § 13-1203(A)(1) meets the definition of a crime of violence, we do not consider Arizona Revised Statutes § 13-1203(A)(2). Additionally, we need not consider 18 U.S.C. § 16(b) because Fernandez-Ruiz's assault convictions were both misdemeanors. See id. (defining a crime of violence, in relevant part, as "any other offense that is a felony ” (emphasis added)).

. Our standard of review is de novo. See Singh v. Ashcroft, 386 F.3d 1228, 1230 (9th Cir.2004); see also Oyebanji v. Gonzales, 418 F.3d 260, 262 (3d Cir.2005) ("Because the BIA is not charged with administering 18 U.S.C. § 16 and has no special expertise regarding the interpretation of that criminal statute, we do not defer to the BIA’s interpretation of that provision.”); Singh, 386 F.3d at 1230 ("We reject the ... assertion that we owe 'substantial deference' to the Attorney General's interpretations of general state and federal criminal statutes.”).

. In so doing, these circuits joined three other circuits that, even before Leocal, restricted the category of crimes of violence under 18 U.S.C. § 16 to crimes requiring specific intent to use force against a person or property. See Jobson v. Ashcroft, 326 F.3d 367, 373-74 (2d Cir.2003); Bazan-Reyes v. INS, 256 F.3d 600, 610-11 (7th Cir.2001); United States v. Chapa-Garza, 243 F.3d 921, 926-27 (5th Cir.2001).

. The statute was nearly identical to the one at issue here. It provided, "A person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another....'' 18 Pa. Cons. Stat. § 2701(a).

. The dissent calls the above hypotheticals "absurd." Dissent Op. at 1138-39. However, our example of running a stop sign is similar to actual cases where a defendant has been convicted of aggravated assault. See State v. Miles, 211 Ariz. 475, 123 P.3d 669, 671 (Ct.App.2005) (sustaining conviction for aggravated assault under Arizona Revised Statutes § 13 — 1204(A)(1)—which requires a violation of Arizona Revised Statutes § 13— 1203 — of a man who ran a stop sign and caused an accident that injured his passenger); State v. Freeland, 176 Ariz. 544, 863 *1131 P.2d 263, 265-66 (Ct.App.1993) (affirming aggravated assault conviction "prosecuted on the theory that defendant, by driving while intoxicated and causing a collision, recklessly caused serious injury to his victim”). Moreover, the dissent fails to cite us to, nor are we aware of, any authority suggesting that Arizona Revised Statutes § 13-1203(A)(1) cannot reach the conduct described in our hypothetical examples. Accordingly, our categorical analysis must address such conduct.
The dissent leads its argument with the trenchant phrase "[m]en do not beat their wives by accident.” Dissent Op. at 1142. Ti'ue. But the terms of Arizona Revised Statutes § 13-3601(A) do not require, and the judicially noticeable documents in the record do not prove, that Fernandez-Ruiz beat his wife. Rather, whether our record shows a conviction under such a statute requires a beating, and whether the documents of conviction show a beating took place, are the precise issues before us. Instead of looking to the record, the dissent would infer that wife-beating took place from the "trust and related vulnerability that characterize domestic relationships.” Dissent Op. at 1137-38. The dissent does not explain how, within the confines of Taylor, the perpetrator's mere domestic relationship to the victim proves that he intentionally used force against her. The statute's title is not enough. See Baron-Medina, 187 F.3d at 1146 ("We look solely to the statutory definition of the crime, not to the name given to the offense or to the underlying circumstances of the predicate conviction.”) (emphasis added).
Further, it is a commonplace of the criminal law that the confidential relationship that exists between the perpetrator and the victim cannot supply the proof of the requisite element of the mens rea with which an act was done. Were a husband to take his wife's car without her consent, the "trust and vulnerability” of the wife would not automatically supply the proof of the husband's intent permanently to deprive her of possession of the car, so as to convert misdemeanor joy-riding into felony car theft.

. The dissent relies on the Senate Judiciary Committee Report accompanying the enactment of the Comprehensive Crime Control Act of 1984. See Dissent Op. at 1141-42 (citing S.Rep. No. 98-225, at 307 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3486-87). This report cites "battery” as an example of a crime of violence within the meaning of § 16(a). See S.Rep. No. 98-225, at 307 & n. 12. Since battery as defined by the Model Penal Code may be accomplished through recklessness, the dissent asserts that Congress intended § 16 to include reckless conduct. See Dissent Op. at 1142-43.
Since the statutory language is clear, we need not look to a report issued by one chamber of Congress as evidence of the statute's meaning. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 267, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (Scalia, J„ concurring) (“[I]t is not only ... improper but also quite unnecessary to seek repeated support in the words of a Senate Committee Report — which, as far as we know, not even the full committee, much less the full Senate, much much less the House, and much much much less the President who signed the bill, agreed with.”).
Even if we do consider the legislative history, it is far from clear that Congress intended § 16(a) to reach reckless conduct. The Senate Report cites 18 U.S.C. § 113(d) (1976) in a footnote to the term "battery.” See S.Rep. No. 98-225, at 307 n. 12. Presumably, the Committee had § 113(d) in mind when it referred to battery. Yet, at least at the time of § 16's enactment, § 113(d) was a "general intent” crime. See United States v. Knife, 592 F.2d 472, 481-82 & n. 12 (8th Cir.1979) ("The element of intent in § 113(f)” — defined as an assault under § 113(d) that results in serious bodily injury — "is satisfied if the general intent to commit the acts of assault arose when [defendant] initially approached[the victim].”); United States v. Martin, 536 F.2d 535, 535-36 (2d Cir.1976) (per curiam) (finding the mental element of § 113(d) to be adequately proven where "the magistrate found *1132 an intent to strike and to scuffle”). Both these cases involve facts showing an intent to strike the victim, not merely the creation of such risk. We therefore doubt that "general intent” under § 113(d) includes reckless conduct, and find the dissent's argument from legislative history unconvincing. See also Popal, 416 F.3d at 254 n. 5 (rejecting for a similar reason the government's argument that the same legislative history shows an intent to include reckless conduct in § 16(a)’s definition of a crime of violence).