**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ALBERTO AYALA-NICANOR,
*Defendant-Appellant.*

No. 10-50069

D.C. No.
3:09-cr-00420-
WQH-1

OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
May 3, 2011—Pasadena, California

Filed September 14, 2011

Before: Alfred T. Goodwin and Kim McLane Wardlaw,
Circuit Judges, and Brian M. Cogan, District Judge.*

Opinion by Judge Wardlaw

---

*The Honorable Brian M. Cogan, U.S. District Judge for the Eastern District of New York, sitting by designation.

17527

## COUNSEL

James M. Chavez, Esq., San Diego, California, for the defendant-appellant.

Laura E. Duffy, United States Attorney; Bruce R. Castetter, Assistant U.S. Attorney, Chief, Appellate Section Criminal Division; Rees F. Morgan, Assistant U.S. Attorney; San Diego, California, for the plaintiff-appellee.

## OPINION

WARDLAW, Circuit Judge:

Alberto Ayala-Nicanor (Ayala) appeals his 70-month below-Guidelines sentence of incarceration for illegal reentry after a prior deportation, in violation of 8 U.S.C. § 1326(a) and (b).

The district court increased Ayala's base offense level by sixteen points because it concluded that Ayala's conviction for willful infliction of corporal injury on a spouse, California Penal Code § 273.5, is a categorical crime of violence under U.S. Sentencing Guidelines (U.S.S.G.) § 2L1.2. In so doing, the court relied on our 2010 decision in *United States v. Laurico-Yeno*, 590 F.3d 818 (9th Cir. 2010), which held that § 273.5 is a categorical crime of violence warranting a sixteen-level increase under the Sentencing Guidelines. Ayala urges us to conclude that we are not bound by *Laurico-Yeno* because the Supreme Court's subsequent decision in *Johnson v. United States*, ___ U.S. ___, 130 S. Ct. 1265 (2010), is irreconcilable intervening authority in that it redefines the meaning of the term "crime of violence."

Ayala also asserts procedural error, contending that the district court "never responded" to Ayala's policy challenge to the illegal reentry Guideline requiring a sixteen-point sentencing enhancement for certain prior convictions. Because we conclude that *Laurico-Yeno* remains good law and that the district court provided a reasoned explanation for increasing Ayala's offense level by sixteen, we affirm.

## I.

We have jurisdiction over Ayala's timely appeal under 28 U.S.C. § 1291. We review the district court's interpretation of the Sentencing Guidelines, including whether a crime qualifies as a "crime of violence" under U.S.S.G. § 2L1.2, de novo.

*United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1141 (9th Cir. 2007). We generally review "the district court's application of the Sentencing Guidelines to the facts of a case for abuse of discretion." *United States v. Grissom*, 525 F.3d 691, 696 (9th Cir. 2008). However, since Ayala did not object below to the sufficiency of the court's explanation for its sentencing determination, we review only for plain error. *United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010).

## II.

On July 27, 2009, Ayala pleaded guilty to being found in the United States after a prior deportation, in violation of 8 U.S.C. § 1326(a) and (b).

In the presentence report (PSR), the probation officer recommended the sixteen-level increase to Ayala's offense level based on his prior convictions for categorical crimes of violence. The PSR indicated that in June 1998, before his deportation, Ayala had been convicted of two felonies arising out of a domestic assault upon his wife: (1) corporal injury to a spouse, in violation of California Penal Code § 273.5(a); and (2) assault by means likely to produce great bodily injury, in violation of California Penal Code § 245(a)(1). Ayala was sentenced to one year in state prison on his § 273.5 conviction, and three years in state prison on the § 245(a)(1) conviction, with the sentences running concurrently.

Ayala objected to the PSR on the ground that California Penal Code § 273.5, corporal injury to a spouse, is not a categorical crime of violence because it is broad enough to include a non-violent "least touching."[1] Ayala also argued that

---

[1]Ayala's sentencing memorandum did not address his § 245(a)(1) conviction, nor did the district court rely on this conviction for the sixteen-level enhancement. Because a conviction under § 245(a) qualifies as a categorical crime of violence, *United States v. Grajeda*, 581 F.3d 1186, 1189

the illegal-reentry sentencing enhancement is without empirical or moral justification, results in unwarranted sentencing disparities, and imposes a disproportionate penalty. Ayala sought a variance of eight levels under 18 U.S.C. § 3553(a) to account for these policy concerns, requesting that the court impose a 48-month sentence of incarceration, instead of a sentence within the advisory Guidelines range of 84-105 months. The Government's Sentencing Memorandum urged the district court to apply the sixteen-level enhancement, and recommended a sentence of 100 months of incarceration.

After the parties filed their sentencing memoranda, but before Ayala's sentencing hearing, we definitively rejected the argument that a violation of § 273.5 is not a categorical crime of violence warranting a sixteen-level increase under U.S.S.G. § 2L1.2. *Laurico-Yeno*, 590 F.3d at 818. At sentencing, Ayala's counsel conceded that *Laurico-Yeno* foreclosed her argument that § 273.5 is not categorically a crime of violence. The district court then applied the sixteen-level enhancement to find a total offense level of 22, found that Ayala's criminal history category was VI, and calculated an advisory Guidelines range of 84-105 months of incarceration. The district court reasoned that, in light of Ayala's extensive criminal history, the 48-month sentence advocated by defense counsel would neither protect the public from future crimes by Ayala nor serve as adequate deterrence for Ayala. The court explicitly noted that it had considered Ayala's policy attack on the sixteen-level increase, and it reiterated the advisory nature of the Sentencing Guidelines. After considering the 18 U.S.C. § 3553(a) sentencing factors and articulating

(9th Cir. 2009), the government contends that Ayala's challenge to the enhancement fails, given that § 245(a) would also support the enhancement. Although the district court *could have also* increased the offense level based on Ayala's § 245(a) conviction, the court's calculation instead rested solely upon Ayala's conviction under § 273.5(a). Therefore, we would be compelled to remand for resentencing if we were to agree that § 273.5(a) is not a categorical crime of violence.

§ 3553(a)'s parsimony provision as the basis for the sentence it intended to impose, the court imposed a sentence of 70 months of incarceration, to be followed by a three-year term of supervised release. Ayala timely appealed.

## III.

In evaluating whether a prior conviction is for a categorical crime of violence warranting the illegal reentry sentencing enhancement, we apply the "categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575 (1990). Under the categorical approach, "the court looks 'not to the particular facts underlying [the defendant's prior] conviction[ ],' but 'only to the fact of conviction and the statutory definition of the prior offense.' " *United States v. Aguila-Montes de Oca*, No. 05-50170, slip op. at 10586 (9th Cir. Aug. 11, 2011) (en banc) (alterations in original) (quoting *Taylor*, 495 U.S. at 600, 602). The sentencing enhancement applies only if "the 'full range of conduct' covered by the state statute[ ] fall[s] within the scope of the federal statutory provision." *United States v. Pallares-Galem*, 359 F.3d 1088, 1099-1100 (9th Cir. 2004). To escape the enhancement, a defendant must show either that the statutory definition of the crime covers a broader range of conduct than the relevant federal generic definition, or that he can point to "cases in which the state courts in fact did apply the statute" to conduct outside the federal definition. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

The illegal reentry sentencing Guideline provision advises a sentencing enhancement of sixteen levels if a defendant has previously been deported after a felony conviction for a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The applicable Guidelines commentary defines "crime of violence" to include any offense "under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

**[1]** California Penal Code § 273.5(a) punishes any person who "willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition." The statute defines a "traumatic condition" as "a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force." § 273.5(c). The relevant question is whether a conviction under § 273.5 requires the use, the attempted use, or the threatened use of physical force against the person of another. In *Laurico-Yeno*, 590 F.3d 818, a decision filed in January 2010, we answered this question in the affirmative, holding that § 273.5 is categorically a crime of violence within the meaning of § 2L1.2(b)(1)(A)(ii). The Supreme Court issued its decision in *Johnson*, 130 S. Ct. 1265, in March of 2010. Ayala argues we are not bound by *Laurico-Yeno*, citing *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc), in which we held that a three-judge panel need not follow a prior panel decision if its reasoning is irreconcilable with an intervening decision by a higher court. Because we conclude that nothing in *Johnson* undermines the reasoning of *Laurico-Yeno*, we reject Ayala's argument.

In *Laurico-Yeno*, we held that § 273.5 is a categorical crime of violence under the illegal reentry Guidelines because § 273.5 "requires the intentional use of physical force against the person of another." 590 F.3d at 823. We recognized that: (1) our prior case law restricted the meaning of "crime of violence" to only those crimes that require the "intentional use of force," *id.* at 821 (citing *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006)); and (2) to qualify as a "crime of violence," the crime must, under Supreme Court precedent, fall "in the category of 'violent, active crimes.'" *Id.* (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)). Reasoning that "the plain terms of the statute require a person willfully to inflict upon another person a traumatic condition," *id.*, thus satisfying both the elements of intent and active vio-

lence, we concluded that § 273.5 "fits squarely within the [federal definition of a crime of violence] by requiring the deliberate use of force that injures another," *id.* at 822.

We rejected Laurico's argument that a non-violent "least touching" could result in a conviction under § 273.5 because Laurico failed to "identify a single § 273.5 case resulting from a non-violent use of force." *Id.* at 822. Laurico merely presented the panel with a " 'theoretical possibility[ ] that [California] would apply its statute to conduct' outside the term 'crime of violence,' " *id.* (quoting *Duenas-Alvarez*, 549 U.S. at 193) (alterations in original), and such "legal imagination" did not suffice to place § 273.5 outside the federal generic definition of "crime of violence," *id.* (quoting *Duenas-Alvarez*, 549 U.S. at 193). In sum, because the text of the statute plainly required the intentional use of physical force against another resulting in physical injury, and Laurico had not shown that the California courts applied the statute more broadly, § 273.5 qualified as a categorical crime of violence.

Ayala contends that we are not bound by *Laurico-Yeno* because the subsequent Supreme Court decision in *Johnson* articulated a new definition of "crime of violence" that is irreconcilable with the holding in *Laurico-Yeno*. In *Johnson*, the Supreme Court considered whether a Florida battery conviction qualified as a "violent felony" within the meaning of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The ACCA defines a violent felony to include any crime punishable for more than one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). The Court concluded that the term "physical force" referred to violent force capable of causing physical pain or injury. *Johnson*, 130 S. Ct. at 1271. The Court determined that the Florida statute did not qualify as a "violent felony" because the Florida Supreme Court had interpreted its battery statute to prohibit "*any* intentional physical contact, 'no matter how slight.' " 130 S. Ct. at

1270 (quoting *State v. Hearns*, 961 So. 2d 211, 218 (Fla. 2007)) (emphasis in original).

**[2]** Nothing in *Johnson* undermines *Laurico-Yeno*. We have already considered and rejected this argument in *Banuelos-Ayon v. Holder*, 611 F.3d 1080 (9th Cir. 2010), albeit under a different statutory scheme. In *Banuelos-Ayon*, we affirmed that a conviction under § 273.5 qualifies categorically as a crime of violence in the immigration context, thus rendering the petitioner removable.[2] As does Ayala, Banuelos-Ayon "contend[ed] that *Laurico-Yeno* [wa]s distinguishable from the present case because *Johnson* is an intervening opinion by a higher authority that undermines *Laurico-Yeno*." *Id.* at 1086. The relevant question, however, was the same as presented here: whether the use, attempted use, or threatened use of physical force against another is an element of § 273.5. We reviewed the California cases cited by the defendant and concluded that the California courts' interpretations of the statute "either do not contradict, or . . . affirm, that for a conviction under § 273.5(a) there must be a strong enough use of direct force to result in an injury." *Banuelos-Ayon*, 611 F.3d at 1085.

Ayala cites the same three unpublished California Courts of Appeal decisions that we analyzed and rejected in *Banuelos-Ayon* in support of his argument that § 273.5 covers a minor "least touching." As we concluded in *Banuelos-Ayon*, these decisions—*People v. Stearns*, No. B183521, 2006 WL 946671 (Cal. Ct. App. Apr. 13, 2006)*, People v. Guster*, No. C043276, 2004 WL 397060 (Cal. Ct. App. Mar. 4, 2004), and *People v. McCombs*, No. F036894, 2002 WL 31097693 (Cal.

---

[2]The petitioner was charged with removability pursuant to 8 U.S.C. § 1227(a)(2)(E). This section renders an alien removable if he has been convicted of a crime of domestic violence, which is defined as including any "crime of violence (as defined in section 16 of Title 18) against a person committed . . . by an individual with whom the person shares a child in common." 8 U.S.C. § 1227(a)(2)(E)(i).

Ct. App. Sept. 20, 2002)—do not "concern conduct punished under § 273.5(a) that might be characterized as 'the least offensive touching.' " *Banuelos-Ayon*, 611 F.3d at 1085. In *Laurico-Yeno* we rejected the additional two cases relied upon by Ayala, *People v. Thurston*, 84 Cal. Rptr. 2d 221 (Ct. App. 1999) and *People v. Gutierrez*, 217 Cal. Rptr. 616 (Ct. App. 1985), because they did not lend support to the contrary argument. 590 F.3d at 821-822.

In *Banuelos-Ayon*, we further noted that even if we had been persuaded by defendant's arguments that § 273.5 did not qualify as a categorical "crime of violence," we were bound by *Laurico-Yeno*'s resolution of this question, and that *Johnson* in no way undermined *Laurico-Yeno*. 611 F.3d at 1086 ("[N]othing in *Johnson* is contrary to our approach to determining the elements of a conviction under California Penal Code § 273.5(a), nor our conclusion that a conviction under that statute is a categorical crime of violence . . . ."). Although counsel in *Banuelos-Ayon* did not present the same arguments advanced by Ayala about the effect of *Johnson*, these additional arguments do not persuade us that *Banuelos-Ayon* was wrongly decided.

**[3]** Contrary to Ayala's position, the *Johnson* Court did not alter the degree of force required under 18 U.S.C. § 16's definition of a "crime of violence." Instead, the *Johnson* opinion recognizes that the federal "crime of violence" definition is "very similar to [the ACCA's violent felony definition], in that it includes any felony offense which 'has as an element the use . . . of physical force against the person or property of another.' " 130 S. Ct. at 1270-71 (citing 8 U.S.C. § 16(a)). Quoting *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Court observes that "the ordinary meaning of ["crimes of violence"], combined with § 16's emphasis on the use of physical force against another person . . . suggests a category of violent, active crimes." *Id.* at 1271 (quoting *Leocal*, 543 U.S. at 11). Rather than undermining *Laurico-Yeno*'s interpretation of the physical force requirement, in which we similarly relied

upon the *Leocal* definition of a crime of violence, the *Johnson* interpretation reinforces that determined in *Laurico-Yeno*.

**[4]** The *Laurico-Yeno* holding is entirely consistent with *Johnson*'s definition which requires the use of "*violent* force —that is, force capable of causing physical pain or injury to another person."[3] 130 S. Ct. at 1271. In *Laurico-Yeno*, we held that § 273.5 was a categorical crime of violence precisely because the statute requires intentional use of physical force that results in a traumatic condition. Given the injury requirement in § 273.5, it was clear that the statute "does not penalize minimal, non-violent touchings." *Laurico-Yeno*, 590 F.3d at 822.

Ayala also argues that we improperly "refused to credit the interpretation of § 273.5's elements by California's own courts" in *Laurico-Yeno*, and that this conflicts with *Johnson*'s holding that the Court was "bound by the Florida Supreme Court's interpretation of state law, including its

---

[3]We note that *Johnson* interprets the definition of a "violent felony" under the ACCA. It appears that the Court's interpretation of the requisite degree of force was significantly influenced by the statutory context:

> We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force —that is, force capable of causing physical pain or injury to another person. . . . When the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer.

130 S. Ct. at 1271 (citations omitted). Moreover, the Court noted that its interpretation of "physical force" was confined to "the context of a statutory definition of 'violent felony.' " *Id.* at 1273. Thus, even if we were to agree with Ayala that *Johnson* requires a higher degree of violent force for a conviction to qualify as a violent felony under the ACCA, this would not alter the degree of force required for a conviction to qualify as a "crime of violence" under 18 U.S.C. § 16. And, the *Johnson* Court rejected the Government's argument that the Court's definition of a "violent felony" under the ACCA would restrict the scope of other statutes that require the use or attempted use of "physical force," such as the definition of a misdemeanor crime of domestic violence. 130 S. Ct. at 1271-72.

determination of the elements" of criminal statutes. *Johnson*, 130 S. Ct. 1269. However, *Laurico-Yeno* is entirely consistent with this holding. In *Johnson*, the Court recognized that the Florida Supreme Court had held that the Florida battery law could be satisfied by "any intentional physical contact, 'no matter how slight.' " 130 S. Ct. at 1270 (quoting *Hearns*, 961 So. 2d at 218). Given the Florida Supreme Court's interpretation of its own statute, no "legal imagination" was required in order for the Court to conclude that the statute did not require the use of violent physical force.

Similarly, in *Laurico-Yeno*, we turned to the California courts' construction of the required element of "traumatic" force to determine that the element satisfied the federal generic definition of a crime of violence. Laurico pointed to California cases interpreting § 273.5 to include a simple battery that results in injury to the victim, *see Gutierrez*, 217 Cal. Rptr. at 620-21, and to the California courts' recognition that the "least touching" qualifies as a simple battery, *see Thurston,* 84 Cal. Rptr. 2d at 224. Laurico asserted that the California courts' prior interpretations meant that "a § 273.5 conviction *could* result from a non-violent use of force." *Laurico-Yeno*, 530 F.3d at 822 (emphasis in original). We rejected Laurico's argument, reasoning that § 273.5's requirement that the defendant's touching must *also* result in a traumatic condition made clear that the statute "does not penalize minimal, non-violent touchings." *Id.* Thus, we did not ignore the California courts' interpretation of the scope of § 273.5. Rather, we concluded that the cases Laurico cited failed to demonstrate that there was a realistic possibility that the California courts would apply the statute to conduct that did not qualify as a "crime of violence." *Id.* This conclusion was further bolstered by the defendant's inability to "identify a single § 273.5 case resulting from a non-violent use of force." *Id.*

**[5]** Ayala's argument rests on the very decisions we rejected in *Laurico-Yeno* and *Banuelos-Ayon* as unsupportive of the proposition he asserts. Ayala, like Laurico and Ban-

uelos before him, fails to identify any California cases demonstrating that a defendant has been convicted under this statute for the non-violent use of force. *Johnson* is readily distinguishable because the Florida Supreme Court's interpretation of the statute made clear that a defendant could be convicted under the state statute without using the level of force required by the federal generic definition. In sum, nothing in *Johnson* undermines the validity of *Laurico-Yeno*, a conclusion we already reached in *Banuelos-Ayon*, and that we reaffirm today.

## IV.

Ayala argues that the district court committed procedural error by failing to respond to his non-frivolous policy challenge to the sixteen-level sentencing enhancement on the grounds that it arbitrarily and disproportionately increases the length of sentences under 8 U.S.C. § 1326. Under *Rita v. United States*, 551 U.S. 338, 356 (2007), a "sentencing judge should set forth enough [of an explanation] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." A district court's imposition of a sentence within the recommended Guidelines range normally does not require a lengthy explanation. *Id.* However, if "a party contests the Guidelines sentence generally under § 3553(a)—that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way," *id.* at 357, a more thorough explanation is appropriate. The *Rita* Court also recognized that while it may be preferable in certain cases for a judge to give a lengthier explanation, "[w]here a matter is . . . conceptually simple . . . and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively." *Id.* at 359.

**[6]** Although "[i]t would be procedural error for a district court . . . to fail adequately to explain the sentence selected,"

*United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc), here the district court's explanation was sufficient. The sentencing transcript demonstrates that the district court recognized its discretion, under *Kimbrough v. United States*, 552 U.S. 85 (2007), to vary from the Sentencing Guidelines, and that it did in fact impose a sentence that varied from the Guidelines range—just not by as many months as Ayala requested. Unlike in *United States v. Henderson*, ___ F.3d ___, 2011 WL 1613411 (9th Cir. Apr. 29, 2011), there is no lack of clarity as to whether the district court failed "to appreciate its *Kimbrough* discretion to vary from the . . . Guidelines . . . on policy grounds." *Id.* at *8. Here, the district court noted the advisory nature of the Guidelines in response to Ayala's policy-based challenge.

The court properly calculated the applicable Guidelines range, evaluated the § 3553(a) sentencing factors, and stated that he had considered Ayala's policy challenge:

> I have certainly considered all of the argument of counsel and certainly [defense counsel's] comments and argument that she has filed in her sentencing papers with respect to the disproportionate impact that a plus-16 has on [Ayala's] advisory sentencing guidelines. Although certainly I would note that the guidelines are advisory only, and the advisory guidelines range is only one factor that the court considers.

The court rejected Ayala's request for a variance from the Guideline range of 84 to 105 months down to 48 months based on Ayala's extensive criminal history, noting that his criminal record "is almost unbroken from the time he was a young man." The court also considered Ayala's serious criminal history category of VI, which had not taken into account eleven contacts with law enforcement that did not result in charges or convictions and other crimes which did not score. In addition, the court considered the number of times Ayala

had been deported, after which Ayala returned to the United States, only to commit further crimes. The court concluded pursuant to § 3553 factors (a)(2)(B) and (a)(2)(C) that Ayala's requested variance to 48 months would not "protect the public from future crimes of the defendant, nor do I think it would afford adequate deterrence to future criminal conduct."

**[7]** In the end, the court reasonably rejected both the Government's requested 100 months of incarceration and Ayala's requested 48-month sentence. After analyzing all of the § 3553 factors, the court settled on a sentence of incarceration of 70 months to protect the public from future crimes by Ayala, to significantly deter Ayala from returning to this country, and to reflect the seriousness of the offense. Finally, that the court imposed a below Guidelines sentence demonstrates that it was well aware of its ability to do so under Supreme Court precedent.

## CONCLUSION

Nothing in *Johnson* undermines the continuing validity of *Laurico-Yeno* and its holding that a conviction under California Penal Code § 273.5 is a categorical crime of violence for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii). Ayala's conviction under § 273.5 qualifies as a "crime of violence" warranting a sixteen-level sentencing enhancement under the Sentencing Guidelines. Nor did the district court commit procedural error in imposing a 70-month sentence of incarceration.

**AFFIRMED**.