**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AURORA OLEA-SEREFINA, AKA Zerefina Aurora Olea Daza, Aurora Seferina Olea, Aurora Olea-Zerefina, *Petitioner*, | No. 20-72231 |
| | Agency No. A074-306-081 |
| v. | |
| | OPINION |
| MERRICK B. GARLAND, Attorney General, *Respondent.* | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 8, 2021[*]
San Francisco, California

Filed May 19, 2022

Before: Susan P. Graber and Daniel P. Collins, Circuit
Judges, and Jennifer Choe-Groves, Judge[**]

Opinion by Judge Collins

---

[*] The panel unanimously concludes that this case is suitable for decision without oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

[**] The Honorable Jennifer Choe-Groves, Judge for the United States Court of International Trade, sitting by designation.

**SUMMARY**[***]

**Immigration**

Denying in part and dismissing in part Zerefina Aurora Olea Daza's petition for review of a decision of the Board of Immigration Appeals, the panel held that Olea's conviction for corporal injury upon a child, in violation of California Penal Code § 273d(a), is a crime of violence aggravated felony that made her ineligible for cancellation of removal.

The Immigration and Nationality Act ("INA") defines "aggravated felony" to include a "crime of violence (as defined in section 16 of title 18 . . .) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Because Olea's conviction records confirmed a jail term of 365 days, the panel explained that whether Olea was convicted of an aggravated felony turned solely on whether a violation of § 273d(a) constitutes a "crime of violence" under 18 U.S.C. § 16.

Section 16(a) defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The panel explained that, under the categorical approach, the key question here was whether the offense defined in § 273d(a) contains, as an element, the actual, attempted, or threatened use of "physical force," which the Supreme Court has held means "violent physical force," – that is, force capable of causing physical pain or injury.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel explained that the relevant language of § 273d(a) imposes criminal punishment on any "person who willfully inflicts upon a child any cruel or inhuman corporal punishment or an injury resulting in a traumatic condition." The BIA noted that this phrasing is very similar to California Penal Code § 273.5(a), which punishes any "person who willfully inflicts corporal injury resulting in a traumatic condition upon" specified persons. Because this court has held that a violation of § 273.5(a) is categorically a crime of violence, the BIA concluded that the same must be true for § 273d(a), which includes comparable language and which, in all events, requires physical harm to the child.

Olea contended that the statutes differ in a way that renders this court's analysis of § 273.5(a) inapplicable to § 273d(a). Specifically, Olea noted that this court held that § 273.5(a) is a crime of violence because the plain terms of the statute require a person willfully to inflict upon another person a traumatic condition. By contrast, she contended that § 273d(a) does not categorically require a traumatic condition or even a corporal injury.

The panel disagreed, explaining that under the California courts' binding determination of the elements of a violation of § 273d(a), *any* conviction under § 273d(a) requires proof that the "punishment" or "injury" resulted in a "traumatic condition." The panel also noted that § 273d(a) requires that the punishment or injury be inflicted willfully, and the California courts have held that "willfully inflicted" requires "a direct application of force by the defendant upon the victim." In light of this understanding of the elements of § 273d(a) as construed by the California courts, the panel concluded that a violation of that statute is categorically a crime of violence under this court's precedent.

The panel rejected the remaining challenges to Olea's removal order.  First, the panel concluded that the agency did not abuse its discretion in denying Olea a further continuance, explaining that the IJ generously afforded her eight continuances and the fact that, after more than four years, Olea claimed to have hired an attorney (but no appearance was entered by any attorney and none appeared at her hearing) did not require the IJ to grant yet another continuance.  Second, the panel concluded that the BIA properly rejected Olea's contentions that the IJ had violated her due process rights by failing to develop the record, explaining that the IJ adequately explored the possibility of asylum with Olea and provided her with an application.  Finally, the panel determined that it lacked jurisdiction to review the agency's denial of voluntary departure.  The panel explained that her constitutional claims were purely conclusory and devoid of supporting factual detail or legal argument, and therefore, the panel deemed any such claim to be forfeited.  The panel also noted that Olea's assertion that the agency did not properly weigh the equities in denying voluntary departure is precisely what INA § 240B(f) precludes the court from reviewing.

## COUNSEL

David M. Whalen, San Diego, California, for Petitioner.

Zoe J. Heller, Senior Litigation Counsel; Karen L. Melnik, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

COLLINS, Circuit Judge:

Petitioner Zerefina Aurora Olea Daza ("Olea"), a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals ("BIA") upholding the decision of the Immigration Judge ("IJ") denying her application for cancellation of removal and ordering her removed to Mexico. We have jurisdiction under § 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, and we deny the petition in part and dismiss it in part.

**I**

In March 2014, Olea was served with a notice to appear charging that she was removable under INA § 212(a)(6)(A)(i) because she had entered the U.S. unlawfully near Tecate, California in 1994. 8 U.S.C. § 1182(a)(6)(A)(i). Olea first appeared in immigration court in May 2014, and the IJ twice continued Olea's removal proceedings, for a total of 13 months, to allow Olea to locate counsel.

At a subsequent hearing in June 2015, Olea stated that she was unable to afford an attorney and was prepared to proceed with her case. In response to the IJ's questions concerning whether she contested removability, Olea admitted entering near Tecate in 1994, but she initially denied that she had done so illegally. The IJ then had the following exchange with Olea:

> Q: So, you came through the border and were inspected by an officer, or did you come illegally through the hills?

A:  Illegally.

Q:   Have you ever had papers to be here legally?

A:  No.

Based on that answer, the IJ found Olea removable as charged.

The IJ then asked Olea a series of questions in order to explore possible grounds for relief.  In response, Olea stated that she had been in the United States continuously since 1994; that she had three U.S. citizen minor children; that she had never been convicted of a crime; that she had not previously appeared before an IJ or been granted voluntary departure; and that she did not fear that anyone would harm her if she returned to Mexico.   The attorney for the Department of Homeland Security ("DHS") noted that two of Olea's responses were inaccurate: Olea had been convicted of a felony in California state court in April 2003, and she apparently had been granted voluntary departure in August 1995.

The IJ noted that Olea normally would have been eligible for cancellation of removal, and she gave Olea a cancellation application to complete.  *See* 8 U.S.C. § 1229b(b)(1) (stating that removal may be cancelled for an alien who has been continuously present in the U.S. for more than 10 years and who, *inter alia*, shows that removal would result in "exceptional and extremely unusual hardship" for a U.S. citizen child).   The IJ expressed concern, however, that Olea's criminal conviction might bar that relief, and so the IJ revisited the question of whether Olea was afraid to return to Mexico: "So, let me ask you one more time.  Do you have

any fear if anyone would harm you in Mexico?" This time, Olea answered "Yes." The IJ then handed Olea an application for asylum and withholding of removal and explained what Olea would have to show to qualify for such relief. Olea also indicated that she intended to file an application for a "U-visa" with U.S. Citizenship and Immigration Services ("USCIS"). *Cf. Medina Tovar v. Zuchowski*, 982 F.3d 631, 633 (9th Cir. 2020) (en banc) (explaining that a "U visa . . . is designed to grant legal status to certain non-citizen victims of crime who assist law enforcement").

At a subsequent hearing in November 2015, the IJ granted Olea a further continuance to allow Olea to complete her applications, and the IJ warned her that she might not be granted a further continuance absent exceptional circumstances. At the next hearing in April 2016, Olea submitted her application for cancellation of removal. Despite the IJ's earlier warnings that further extensions might not be granted, the IJ again postponed Olea's removal hearing, this time in light of Olea's assertion that her U-visa application was pending. However, at the ensuing September 2016 hearing, DHS counsel reported that the U-visa application had actually been denied in January 2016. A friend who appeared with Olea at the hearing and who was assisting her with her applications explained that the U-visa application had to be resubmitted to USCIS in light of issues concerning the supporting paperwork. With DHS's concurrence, the IJ granted another continuance in light of the new U-visa application.

At a further hearing in May 2017, Olea handed the IJ paperwork showing that the second U-visa application had been received by USCIS in March 2017, and the IJ again granted a continuance. In October 2017, at the next hearing,

the IJ granted yet another continuance in light of the still-pending U-visa application and Olea's representations that she had been trying to find an attorney. The IJ stated, however, that even if Olea still lacked an attorney at the time of the next hearing, she would proceed to address the merits of Olea's application for cancellation of removal.

The hearing on the cancellation application was held in April 2018. At the start of the hearing, Olea asked for a further continuance, stating that she had recently hired an attorney, whose last name she did not recall, and that she had not yet heard anything about the U-visa application. The IJ denied the requested continuance, noting that Olea had been given ample time to get an attorney, that no attorney had entered an appearance, and that the case had been pending for four years. DHS counsel noted for the record that the second U-visa application had been denied in November 2017. Turning to the merits of the application for cancellation, the IJ denied it on the grounds that Olea's conviction for corporal injury upon a child in violation of California Penal Code § 273d(a) rendered her statutorily ineligible for that relief. Specifically, the IJ concluded that a violation of § 273d(a) was categorically both a crime involving moral turpitude and an aggravated felony, and that Olea was therefore ineligible for cancellation under INA § 240A(b)(1). Due to the nature of Olea's conviction, the IJ also denied, as a matter of discretion, Olea's alternative request for voluntary departure and ordered her removed to Mexico.

The BIA upheld the denial of cancellation of removal, based solely on the ground that a violation of § 273d(a) is categorically an aggravated felony. The BIA also rejected Olea's contentions that the IJ violated her due process rights by allegedly failing to develop the record, that the IJ should

have granted a further continuance, and that the IJ should have granted voluntary departure. Olea timely petitioned this court for review.

## II

To be eligible for cancellation of removal under INA § 240A(b)(1), an alien must not have been convicted of an offense described in, *inter alia*, INA § 237(a)(2). *See* 8 U.S.C. § 1229b(b)(1)(C). Among the offenses listed in § 237(a)(2) is "an aggravated felony." *See id.* § 1227(a)(2)(A)(iii). We hold that the BIA properly concluded that Olea's 2003 conviction for violating California Penal Code § 273d(a) constituted a conviction for an aggravated felony within the meaning of the INA, thereby rendering her ineligible for cancellation of removal.

The INA's definition of "aggravated felony" includes, *inter alia*, a "crime of violence (as defined in section 16 of title 18 . . .) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Olea's conviction records confirm that her sentence for her § 273d(a) conviction included, as a condition of her probation, a jail term of 365 days, which meets the statutory requirement of a term of "at least one year." *Id.*; *see also Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1133 (9th Cir. 2016) (holding that a sentence of 365 days in jail that is imposed as a condition of probation "equates to imprisonment of 'at least one year'" (citation omitted)). Olea argues that the term of imprisonment was less than one year because she actually served fewer than 365 days in jail, but the INA specifically provides that "[a]ny reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in

whole or in part." 8 U.S.C. § 1101(a)(48)(B). Because Olea's sentence, as ordered by the court, included a jail-term of 365 days, it met the statutory one-year minimum. Accordingly, whether Olea was convicted of an "aggravated felony" turns solely on whether a violation of § 273d(a) constitutes a "crime of violence" under 18 U.S.C. § 16. Reviewing that question de novo, *Amaya v. Garland*, 15 F.4th 976, 980 (9th Cir. 2021), we conclude that it does.

Section 16(a) defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a).[1] In determining whether a violation of § 273d(a) constitutes a "crime of violence' under that definition, we apply a "categorical approach," meaning that our "sole focus is on the elements of the relevant statutory offense, not on the facts underlying the convictions." *United States v. Watson*, 881 F.3d 782, 784 (9th Cir. 2018). Consequently, the key question here is whether the offense defined in § 273d(a) contains, as an element, the actual, attempted, or threatened use of "physical force," which the Supreme Court has held means "'violent' physical force—'that is, force capable of causing physical pain or injury.'" *Id*. (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). We therefore must identify the elements of a violation of § 273d(a) and determine whether they include "the level of force required by the federal

---

[1] Section 16 contains a second, "residual clause" that also includes, in the definition of "crime of violence," "'any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" *Sessions v. Dimaya*, 138 S. Ct. 1204, 1211 (2018) (quoting 18 U.S.C. § 16(b)). However, the Supreme Court has invalidated that residual clause as "impermissibly vague." *Id*. at 1210.

generic definition." *United States v. Ayala-Nicanor*, 659 F.3d 744, 752 (9th Cir. 2011).

The relevant language of § 273d(a) imposes criminal punishment on "[a]ny person who willfully inflicts upon a child any cruel or inhuman corporal punishment or an injury resulting in a traumatic condition." *See* CAL. PENAL CODE § 273d(a). The BIA noted that this phrasing is very similar to a separate domestic violence offense currently set forth in California Penal Code § 273.5(a), which punishes "[a]ny person who willfully inflicts corporal injury resulting in a traumatic condition upon" specified persons, including a spouse, former spouse, or cohabitant. *See id*. § 273.5(a). Because we have held that a violation of § 273.5(a) is categorically a crime of violence, *see Ayala-Nicanor*, 659 F.3d at 746; *Banuelos-Ayon v. Holder*, 611 F.3d 1080, 1083–86 (9th Cir. 2010); *United States v. Laurico-Yeno*, 590 F.3d 818, 820 (9th Cir. 2010), the BIA concluded that the same must be true with respect to § 273d(a), which includes comparable language and which, in all events, "requires physical harm to the child in order to be violated."

Olea contends, however, that the statutes differ in a way that renders our analysis in these cases inapplicable to § 273d(a). Specifically, Olea notes that we held that § 273.5(a) is a crime of violence because "the plain terms of the statute require a person willfully to *inflict upon another person a traumatic condition*." *Ayala-Nicanor*, 659 F.3d at 749 (quoting *Laurico-Yeno*, 590 F.3d at 821) (emphasis added); *see also Banuelos*, 611 F.3d at 1084 (holding that § 273.5(a) requires the use of violence because it "requires that the defendant '*willfully inflict . . . corporal injury* resulting in a *traumatic condition*'" (emphasis added by court)). By contrast, she contends, § 273d(a) does *not* categorically require "a traumatic condition" or even a

"corporal injury."  That is true, according to Olea, because § 273d(a) assertedly permits conviction if the defendant willfully inflicts upon a child *either* (1) "any cruel or inhuman corporal punishment" *or* (2) "an injury resulting in a traumatic condition."  This argument fails, because it ignores the fact that, in applying the categorical approach to a state offense, we are bound by the state courts' "interpretation of state law, including [their] determination of the elements" of an offense.  *Johnson*, 559 U.S. at 138; *see also Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) (holding that this court must "follow the decisions of the state's intermediate appellate courts" absent "convincing evidence" the state supreme court would decide otherwise (citations omitted)).  Contrary to how Olea reads the statute, the California courts have consistently held that a "traumatic condition" is a required element of *any* violation of § 273d(a).

In 1961, the California court of appeal in *People v. Stewart*, 10 Cal. Rptr. 217 (Ct. App. 1961), addressed the then-existing version of § 273d, which imposed punishment on "any person who wil[l]fully inflicts upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition."  *See* 1957 Cal. Stat. 2673, ch. 1342, § 1.**[2]**  The court held that "[n]o conviction under section 273d may be had without evidence that the child has suffered a traumatic condition."  *Stewart*, 10 Cal. Rptr. at 219.  By holding that a "traumatic condition" is a required element of *any* conviction under § 273d, the court effectively read the

---

**[2]** In subsequent amendments, the Legislature redesignated the relevant language as subsection (a) and made other minor changes.  In 1999, the Legislature further amended § 273d(a) by adding the word "an" before "injury."  *See* 1999 Cal. Stat. 4937, ch. 622, § 8.  We discuss the effect of this amendment below.  *See infra* at 13–15.

statute as having two main elements: it applies to "any person who [1] wil[l]fully inflicts upon any child any cruel or inhuman corporal punishment or injury [2] resulting in a traumatic condition."  Consistent with *Stewart*, the court of appeal in *People v. Thomas*, 135 Cal. Rptr. 644 (Ct. App. 1976), held that the "traumatic condition" clause was applicable in a case in which the defendant was charged with "one count of inflicting cruel and inhuman corporal punishment on a child" in violation of § 273d.  *Id*. at 645–46 (rejecting contention that statute was unconstitutionally vague).  And in *People v. Cockburn*, 135 Cal. Rptr. 2d 807, 814 (Ct. App. 2003), the court of appeal upheld, based on *Thomas*, the following description of the elements of the § 273d(a) offense, which was contained in the relevant official pattern jury instruction:

> "1. A person willfully inflicted cruel or inhuman punishment or an injury upon the body of a child; *and*
>
> 2. The infliction of this punishment or this injury resulted in a traumatic condition."

*Id*. at 814 (emphasis added) (quoting California Jury Instructions, Criminal ("CALJIC"), No. 9.36 (7th ed. 2003)).[3]

   *Stewart*, *Thomas*, and *Cockburn* all construed the earlier version of what is now § 273d(a), *i.e.*, prior to its amendment

---

[3] Cockburn committed his offense in November 1999, which was after the 1999 amendment was enacted in October 1999, but before it took effect. *See Cockburn*, 135 Cal. Rptr. 2d at 811 n.7 (noting that the prior version of the statute applied in Cockburn's case); *see also* Cal. Const. art. IV, § 8(c) (prescribing effective dates of statutes).  *Cockburn* thus construed the prior version of the statute.

in 1999.  *See supra* note 3.  That amendment added the single word "an" before the word "injury," so that the relevant language now reads: "Any person who willfully inflicts upon a child any cruel or inhuman corporal punishment or an injury resulting in a traumatic condition is guilty of a felony."  *See* CAL. PENAL CODE § 273d(a).[4]  The addition of that article suggests that "*an* injury" is a distinct noun phrase from "*any* cruel or inhuman corporal punishment," which in turn indicates that the adjectival phrase "cruel and inhuman corporal" modifies only "punishment" and not "injury."  But that does not mean that the phrase that follows those two noun phrases—"resulting in a traumatic condition"—applies only to the second of these two phrases and not to the first.  On the contrary, the California courts have continued to adhere to the view that in *all* cases § 273d(a) requires proof of "the infliction of a traumatic condition (*i.e.*, physical injury) upon a child."  *People v. Moussabeck*, 68 Cal. Rptr. 3d 877, 881 (Ct. App. 2007) (citing *Thomas*).[5]

---

[4] This was also the relevant phrasing at the time that Olea committed her offense in 2003.  *See* 1999 Cal. Stat. 4937, ch. 622, § 8.

[5] Further, this reading of § 273d(a) has been consistently enshrined in the applicable California pattern jury instructions.  Indeed, although *Cockburn* arose under the prior statute, the version of the pattern instruction endorsed in that case was the *post-amendment* version that was adopted in 2003 and that included the word "an" before "injury."  *See* 135 Cal. Rptr. 2d at 814 (quoting CALJIC No. 9.36 (7th ed. 2003)).  That version notably retained the requirement that a "traumatic condition" must always be shown.  *See id*.  The current pattern jury instruction likewise preserves that requirement in defining the elements of a § 273d(a) violation as follows:

> 1. The defendant willfully inflicted (cruel or inhuman physical punishment/ [and/or] an injury) on a child;

Accordingly, we conclude that, under the California courts' binding "determination of the elements" of a violation of § 273d(a), *see Johnson*, 559 U.S. at 138, *any* conviction under § 273d(a) requires proof that the "punishment" or "injury" "result[ed] in a traumatic condition." *See* CAL. PENAL CODE § 273d(a). Moreover, *Stewart* further defined a "traumatic condition," for purposes of § 273d, "as a wound or other abnormal bodily condition resulting from the application of some external force." 10 Cal. Rptr. at 219; *see also Thomas*, 135 Cal. Rptr. at 646 (same). That definition was clarified, in the same CALJIC pattern instruction upheld in *Cockburn*, to mean "a condition of the body, such as a wound or external or internal injury, whether of a minor or a serious nature, *caused by a physical force*." *Cockburn*, 135 Cal. Rptr. 2d at 814 (quoting CALJIC No. 9.36) (emphasis added).

We also note that § 273d(a) requires that the defendant "inflict[]" the punishment or injury "willfully," *see* CAL. PENAL CODE § 273d(a), which requires "a purpose or willingness to commit the act" in question, *see id*. § 7(1). Moreover, as used in both § 273d(a) and § 273.5(a), the California courts have held that the requirement that the injury be "willfully inflicted" requires "a direct application of force by the defendant upon the victim." *People v. Jackson*, 91 Cal. Rptr. 2d 805, 808–09 (Ct. App. 2000) (applying such a requirement to § 273.5(a) based in part on

---

[AND]

2. The (punishment/ [and/or] injury) inflicted by the defendant caused a traumatic physical condition to the child[.]

*See* Jud. Council of Cal., Criminal Jury Instructions, No. 822 (2022).

caselaw construing § 273d(a)); *see also Laurico-Yeno*, 590 F.3d at 821.

In light of this understanding of the elements of § 273d(a) as construed by the California courts, we have little difficulty concluding that a violation of that statute is categorically a crime of violence under our precedent. As we have explained above, a violation of § 273d(a) requires the "willful[]" infliction of an injury "resulting in a traumatic condition," *i.e.*, the intentional application of physical force that causes a "wound or other abnormal bodily condition." *Stewart*, 10 Cal. Rptr. at 219. That brings § 273d(a) squarely within our holding in *Laurico-Yeno* that a crime that "penalizes the intentional use of force that results in a traumatic condition" is categorically a crime of violence. 590 F.3d at 822; *see also Ayala-Nicanor*, 659 F.3d at 751 (noting that, "in *Laurico-Yeno*, we turned to the California courts' construction of the required element of 'traumatic' force to determine that the element satisfied the federal generic definition of a crime of violence"); *Banuelos-Ayon*, 611 F.3d at 1086 (reaffirming that § 273.5(a) is a crime of violence because it "penalizes the intentional use of force that results in a traumatic condition, and not minimal, non-violent touchings"); *see generally Johnson*, 559 U.S. at 140 (holding that "crime of violence" requires an element of actual, attempted, or threatened use of "force capable of causing physical pain or injury").

The BIA therefore correctly concluded that Olea's conviction under § 273d(a) was a conviction of an "aggravated felony" and that she was therefore statutorily ineligible for cancellation of removal.

### III

We reject Olea's remaining challenges to her removal order.

### A

Olea contends that the BIA erred in upholding the IJ's denial of a further continuance, which she contends infringed her right to counsel. "The decision to grant or deny [a] continuance is within 'the sound discretion of the [IJ] and will not be overturned except on a showing of clear abuse.'" *Garcia v. Lynch*, 798 F.3d 876, 881 (9th Cir. 2015) (citations omitted). "When reviewing an IJ's denial of a continuance, we consider several factors, including: (1) the nature of the evidence not obtained or admitted as a result of the denial of the continuance, (2) the reasonableness of the alien's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted." *Id*. (citing *Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009)). Considering the listed factors that are applicable here, we find no clear abuse of discretion.

The IJ generously afforded Olea eight continuances, to allow her to locate counsel, to prepare her applications, and to await the outcome of her U-visa applications. *See supra* at 5–8. The fact that, after more than four years, Olea now claimed to have hired an attorney did not require the IJ to grant yet another continuance. No appearance had been entered by any attorney, none was present at the hearing, and the IJ had specifically warned at the prior hearing that she would proceed to the merits of Olea's application for cancellation of removal at the April 2018 hearing. The IJ acted well within her discretion in following through with the proceedings and rendering a decision.

**B**

The BIA properly rejected Olea's contentions that the IJ had violated her due process rights by failing to develop the record.

We "ordinarily review due process challenges de novo." *Amaya*, 15 F.4th at 986 (citing *Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105, 1107 (9th Cir. 2003)). "A due process violation occurs where '(1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting [her] case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation.'" *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (citation omitted). The BIA correctly concluded that Olea's due process claim failed at the first of these two steps.

As the BIA noted, the record confirms that the IJ adequately explored the possibility of asylum with Olea and provided her with an application. Indeed, after Olea had already stated on the record that she had no fear of returning to Mexico, the IJ specifically revisited the subject of asylum after realizing that Olea's conviction might bar her from obtaining cancellation of removal. The IJ explained what Olea would have to show to obtain such relief, and she afforded ample time for Olea to pursue such a claim. Olea simply failed to do so. *See supra* at 6–8.[6] The record also

---

[6] We reject Olea's suggestion that a comment made by the DHS attorney at one of the hearings should be understood as indicating that Olea had actually *filed* an asylum application. In response to a question about whether *the IJ had provided to Olea* at the prior hearing either "an Asylum Application" or a "Cancellation" application, DHS counsel responded, "[w]e've been provided both applications." Moreover, the

belies Olea's suggestion that the IJ did not develop a sufficient factual basis to conclude that Olea had entered the U.S. unlawfully.  After Olea initially denied that she had entered illegally, the IJ asked more specific questions that clarified the matter, and Olea admitted that she had entered unlawfully.  Indeed, Olea also expressly admitted in her application for cancellation of removal that she had entered unlawfully.  Olea has failed to show that the proceedings were "so fundamentally unfair that [she] was prevented from reasonably presenting [her] case." *Lacsina Pangilinan*, 568 F.3d at 709 (citations omitted).

## C

Under INA § 240B(f), we lack "jurisdiction over an appeal from denial of a request for an order of voluntary departure." 8 U.S.C. § 1229c(f).  Nonetheless, we retain jurisdiction to review "constitutional claims or questions of law." *Id*. § 1252(a)(2)(D); *see also Corro-Barragan v. Holder*, 718 F.3d 1174, 1177 (9th Cir. 2013).  Although Olea's brief asserts that her due process and equal protection rights have been violated, the contention is purely conclusory and devoid of supporting factual detail or legal argument.  We therefore deem any such claim to be forfeited. *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011).  That leaves only Olea's assertion that the agency did not properly weigh the equities in denying voluntary departure.  That, however, is precisely what § 240B(f)

---

ensuing discussion makes clear that Olea had not completed or filed any applications at that point, because she was instructed to "come back to court with [her] applications" at the next hearing.

precludes us from reviewing. We therefore dismiss this aspect of the petition for lack of jurisdiction.

\*     \*     \*

The petition for review is **DENIED** in part and **DISMISSED** in part.